UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CAROLYN DANIELS,

    Plaintiff                                   Civil Action No. 08-12292

v.                                          HON. BERNARD A. FRIEDMAN
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN

COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Carolyn Daniels brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

## **PROCEDURAL HISTORY**

On January 31, 2005, Plaintiff filed an application for DIB, alleging an onset of disability date of April 15, 1995.[1] (Tr. 45-47, ). After the initial denial of the claim, Plaintiff filed a request for an administrative hearing, held on October 1, 2007 in Flint, Michigan before Administrative Law Judge ("ALJ") Joel Fina (Tr. 130). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Judith Findora (Tr. 135-158, 158-164). On December 27, 2007, ALJ Fina determined that although Plaintiff was not capable of performing her past relevant work between May 20, 1997 and the expiration of her insurance on September 30, 1999, she could nonetheless perform a significant range of other work (Tr. 19-20). On March 24, 2008, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final decision on May 28, 2008.

## **BACKGROUND FACTS**

Plaintiff, born August 8, 1954, was age 53 when the ALJ issued his decision (Tr. 45). She received a high school diploma and worked as an assembler, retail clerk, and telephone operator (Tr. 64, 66-70). Plaintiff alleges disability as a result of carpal tunnel syndrome ("CTS") and lower back pain (Tr. 60).

### A. Plaintiff's Testimony

---

[1] Plaintiff's counsel, noting that a prior application for benefits alleging disability as of April 15, 1995 had been denied on May 19, 1997, requested an amended onset date of May 20, 1997. (Tr. 134).

Plaintiff, divorced, testified that she lived with a roommate in a single-family home in Flint, Michigan (Tr. 136). Plaintiff, 5' 4" and 184 pounds, reported that she completed high school but had received no additional training (Tr. 137).

Plaintiff testified that between May 20, 1997 and the expiration of DIB on September 30, 1999, hand, arm, shoulder, and neck pain prevented her from working (Tr. 138). She acknowledged that during this period, she continued to care for her own personal needs and held a valid driver's license, but was unable to drive, cook, wash dishes, or perform other household and outdoor chores due to symptoms of CTS and lower back pain (Tr. 138-141). Plaintiff alleged that her activities for the period in question were limited to watching television, making microwave meals, occasional shopping, and visiting her mother (Tr. 141-142).

Plaintiff testified that she was unable to sit in one position for more than 15 minutes and could not stand or walk for than 20 minutes (Tr. 145). She reported that as a result of balance problems, she had fallen on several occasions (Tr. 146). On a scale of one to ten, Plaintiff characterized her back pain as a "ten"(Tr. 148). She testified that she also experienced wrist pain (Tr. 148). She indicated that she had been prescribed blood pressure and pain medication during the period in question (Tr. 150). Plaintiff reported that she had been treated by a psychiatrist for depression but had not been prescribed psychotropic medication[2] (Tr. 151). She testified that a typical day consisted of arising to prepare

---

[2]The transcript does not contain treating notes for mental health problems.

breakfast for her son, sleeping, watching television, and eating (Tr. 152-153). Plaintiff also reported that she drank up to three cans of beer at a sitting, but denied the use of illegal drugs (Tr. 154). Plaintiff alleged that she was unable to lift more than five pounds (Tr. 155).

### B.    Medical Evidence

#### 1.  Records Created Before September 30, 1999

In January, 1997, an MRI of the lumbar spine showed no significant changes from a September, 1995 study (Tr. 87). In February, 1997, neurosurgeon Clifford C. Douglas, M.D. summarized Plaintiff's medical history, noting that her car had been rear-ended in vehicular accidents occurring in 1994 and 1995 (Tr. 83). Dr. Douglas noted that Plaintiff reported low back pain, balance problems, and difficulty sitting or standing for extended periods (Tr. 83). Dr. Douglas also noted that Plaintiff reported improvement after undergoing a hip adjustment, steroid injections, and physical therapy (Tr. 83). Dr. Douglas, citing a January, 1997 MRI showing osteoarthropathy at L5-S1, recommended that Plaintiff "continue with a non-operative course" (Tr. 84).

#### 2.  Subsequent Records

In June, 2005, Plaintiff complained to Richard Kovan, M.D. of continued lumbar back pain and radiating leg pain on the left (Tr. 89). Plaintiff demonstrated a normal gait, but reported that recent physical therapy had exacerbated rather than improved her condition (Tr. 89). Dr. Kovan noted that Plaintiff was "independent with all activities of daily living and self-care skills" (Tr. 89). The following month, nerve conduction studies of the left lower

extremity showed normal results (Tr. 91). Dr. Kovan recommended a left L4-5 and L5-S1 transforaminal injections (Tr. 92).

### C.     Vocational Expert Testimony

VE Judith Findora classified Plaintiff's past relevant work as an assembler as exertionally light to medium[3] (Tr. 81, 409).

The ALJ then posed the following hypothetical question:

> "[P]lease assume a person of the claimant's age, education, and work experience and skill set who is able to perform work involving the need for a sit/stand option with the ability to alternate positions frequently; lifting up to 15 pounds occasionally; occasional use of hands, wrists for gross manipulation; the ability to do occasional writing, and no repetitive pushing or pulling. Assuming the same vocational factors, limitations, in your opinion could such a person perform claimant's past work as . . . performed or as customarily performed?"

(Tr. 161).

The VE found that the hypothetical individual would be unable to perform her past relevant work as an assembler or any other exertionally medium or light work due to the 15-pound weight limitation as well as the ability to handle, finger, or feel objects on an occasional basis only (Tr. 161). However, she found that given the above limitations, the individual could perform the sedentary work of a receptionist or information clerk (13, 400

---

[3] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

jobs in the regional economy), inspector (1,500) or telemarketer (5,300) (Tr. 162-163). The VE also found that Plaintiff could work as a visual surveillance monitor and visual inspector (Tr. 161-162).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Fina determined that Plaintiff experienced the severe impairments of bilateral carpal tunnel syndrome, degenerative joint disease of the left hip, and degenerative disc disease, finding however, that Plaintiff's impairments did not meet or medically equal one of the listed impairments found in Appendix 1, Subpart P, Regulation No. 4 (Tr. 16-17).

The ALJ found that through the date last insured, Plaintiff retained the residual functional capacity ("RFC") to

> "perform a significant range of sedentary work that required lifting and carrying up to ten pounds and allowed for the opportunity to alternate between sitting and standing positions at will with the ability to alternate positions frequently. The claimant also was capable of performing work activity that required occasional use of hands/wrists for gross manipulation and the ability to perform occasional writing. However, the claimant was unable to perform work activity that required any repetitive pushing or pulling"

(Tr. 17). Adopting the VE's job findings, the ALJ found that Plaintiff could work as a telemarketer, receptionist, and inspector (Tr. 19). The ALJ rejected Plaintiff's allegations of disability for the period in question, finding that her testimony "concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (Tr. 18). The ALJ also noted that despite her allegations of disability, Plaintiff was "treated exclusively with conservative measures" (Tr. 18).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

-7-

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### SSR 85-15

Plaintiff disputes the administrative finding that she was capable of a significant range of sedentary work during the period in question, asserting that the VE's testimony supported a finding of disability.  *Plaintiff's Brief, Docket #7* at 6-8.  Citing SSR 85-15, Plaintiff contends that the VE properly found that her manipulative limitations precluded all gainful employment.  *Id.* at 8.

SSR 85-15 provides in pertinent part:

"Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant

> limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations. "Fingering" involves picking, pinching, or otherwise working primarily with the fingers. It is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion. As a general rule, limitations of fine manual dexterity have greater adjudicative significance--in terms of relative numbers of jobs in which the function is required--as the person's exertional RFC decreases. Thus, loss of fine manual dexterity narrows the sedentary and light ranges of work much more than it does the medium, heavy, and very heavy ranges of work."

1985 WL 56857, *7.

The argument for remand on the basis of this Regulation fails for multiple reasons. First, because Plaintiff experiences exertional limitations (sitting, standing, walking pulling, and pushing) as well as non-exertional manipulative impairments, SSR 85-15 is inapplicable. *Hicks v. Commissioner of Social Security,* 105 Fed.Appx. 757, 765, 2004, WL 1687945, *7 (6th Cir. 2004)(*citing Doneworth v. Shalala,* 1996 WL 26922, at *4 (6th Cir.1996)("SSR 85-15 does not apply to claimant since he has both exertional and nonexertional limitations and SSR 85-15 applies to cases where only a nonexertional limitation is present"). Because Plaintiff has not disputed the ALJ's finding that she also experienced exertional limitations, relief pursuant to this regulation is unavailable. Likewise, I disagree with Plaintiff's substantive argument that the ALJ overlooked her manipulative limitations in crafting his hypothetical question. Although Plaintiff's medical records contain minimal evidence to support the degree of limitations she alleged as a result of CTS, the ALJ's hypothetical question nonetheless limited gross manipulations and writing activities to an occasional basis

(Tr. 160-161).

Moreover, although Plaintiff places great significance on the VE's *initial* statement that hypothetical limitations precluded all work, the VE's subsequent testimony indicates that she was referring to a preclusion on work performed at a *greater than sedentary level* of exertion (Tr. 161-162). The VE's original finding that the hypothetical question precluded *all* work was apparently based on her erroneous assumption that Plaintiff, 53 at the time of the hearing, was applying for benefits based on her *current* condition. In that case, a finding that she could perform only sedentary work would generally direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10."*Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich.,1986). Of course here, Plaintiff's application is based on her condition between May 20, 1997 and September 30, 1999. Because she was still a "younger" individual when her DIB entitlement expired, the ALJ permissibly denied her claim based on her ability to perform sedentary work for the closed period.

Further, Plaintiff's related argument that the ALJ "brow beat" the VE into changing her initial response is without merit. *Plaintiff's Brief* at 8. The ALJ, understandably confused that the VE's original "no jobs" testimony contradicted her subsequent findings that the hypothetical individual could perform the work of a visual surveillance monitor, information clerk, or visual inspector, asked as follows: "Is there any reason why . . . your response just given to those positions [is] in conflict with your previous opinion that there

were no jobs?" To which the VE responded "because I have those [jobs] under the sedentary category" (Tr. 162).   The VE's subsequent testimony, including regional and national job statistics, indicates that she found that the hypothetical individual was capable of a significant range of sedentary work (Tr. 162-164).   The ALJ's reasonable efforts to clarify the VE's statements (which were in fact confusing to this Court) did not amount to "spoon feeding" her answers.

In closing, I note that while Plaintiff obviously sought some degree of medical intervention during the closed period, the evidence  points strongly to a finding of non-disability as defined by the Commissioner.  The administrative decision is well within the "zone of choice" accorded to the fact-finder at the administrative  level.  *Mullen v. Bowen, supra*, 800 F.2d at 545.  Accordingly, the ALJ's decision should not be disturbed by this Court.

## IV.  CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1 (d)(2).  Failure to file specific objections constitutes a waiver of any further right to

appeal.  *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct.46, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local* 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1 (d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response should not be more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained

 within the objections.

s/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated:  March 31, 2009

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 31, 2009.

          s/Susan Jefferson

          Case Manager